UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NIKOLA AKRAP, ROCK LIMO SERVICE, INC.<br><br>Petitioners,<br><br>v.<br><br>GENERAL STEEL DOMESTIC SALES, LLC,<br><br>Respondent. | No. 13 CV 1482<br>Appeal from American Arbitration Association Award No. 51 421 00829<br><br>Judge Rebecca R. Pallmeyer |

## MEMORANDUM OPINION AND ORDER

Petitioners, Nikola Akrap and Rock Limo Service, Inc. d/b/a Aaron Park Limousine (hereinafter collectively "Akrap" or "Petitioners") entered into an agreement to purchase a prefabricated steel building from General Steel Domestic Sales, LLC (hereinafter "General Steel" or "Respondent"), to be constructed on property owned by Petitioners. When the deal stalled, Petitioners demanded return of their deposit, but General Steel refused to pay it. Petitioners initiated arbitration pursuant to an arbitration clause in the purchase order. The arbitrator concluded, however, that it was Petitioners, not Respondent, that had breached the agreement. Dissatisfied with this result, Petitioners filed a petition to vacate the award in the Circuit Court of Cook County. General Steel removed the case to this court pursuant to 28 U.S.C. § 1332, 1441, and 1446, and has filed a cross-petition to confirm the arbitration award [5] pursuant to the Federal Arbitration Act, 9 U.S.C. § 9. Respondent has also requested an award of attorneys' fees incurred in responding to the petition. The court's jurisdiction is secure: Respondent is an LLC whose members are all Colorado citizens, Petitioners are citizens of Illinois, and more than $75,000 is at stake. For the reasons set forth below, the court denies the petition to vacate, confirms the arbitration award, and grants Respondent's request for attorneys' fees, subject to further

proceedings.

## BACKGROUND

In challenging the arbitrator's award, Petitioners face an uphill battle. *See Oxford Health Plans LLC v. Sutter*, 133 S. Ct. 2064, 2068 (2013) (courts will vacate an arbitral award "'only in very unusual circumstances,'" quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 942 (1995).) Courts give substantial deference to such awards, as "'[j]udicial review of arbitration is tightly limited . . . .'" *Environmental Barrier Co.,LLC v. Slurry Systems, Inc.*, 540 F.3d 598, 607 (7th Cir. 2008), quoting *Baravati v. Josephthal, Lyon & Ross, Inc.*, 28 F.3d 704, 706 (7th Cir.1994). If the arbitrator resolved the "entire dispute" and the court understands that resolution, the award must be confirmed regardless of the existence of error, clear error, or even gross error. *IDS Life Ins. Co. v. Royal Alliance Assocs., Inc.*, 266 F.3d 645, 650-51 (7th Cir. 2001). General Steel's motion to enforce the award is governed by the flip side of this standard: A petition to confirm an arbitral award is "usually routine or summary. With few exceptions, as long as the arbitrator does not exceed her delegated authority, her award will be enforced. This is so even if the arbitrator's award contains a serious error of law or fact." *Hasbro, Inc. v. Catalyst USA, Inc*., 367 F.3d 689, 691-92 (7th Cir. 2004) (internal citations and quotations omitted).

As noted, Petitioner initiated arbitration, and after initial resistance from Respondent, the parties selected retired judge Franklin I. Kral as the arbitrator. Over two days in October 2012, Arbitrator Kral heard evidence from five witnesses: Nikola Akrap and his wife Ranka Akrap; John Vrdolyak, Akrap's attorney; Jeffery Knight, president and owner of General Steel; and Steven Paige, General Steel's sales representative. (Amended Petition [14] ¶ 13.) In support of their petition to vacate, the Akrap Petitioners argue that Arbitrator Kral " failed to reach a reasonably possible construction of the contract at issue under a fair interpretation of the contract." (*Id.* ¶ 16.) Having reviewed the arbitration record with some care, the court finds no support for this argument.

Arbitrator Kral made the following findings: On December 9, 2005, Akrap signed a purchase

agreement with General Steel, under which it would pay General Steel $395,000 for the fabrication of steel components for construction of a building. (*Id.* ¶ 10; Award of Arbitrator, Ex. B to Amended Petition [14-2], (hereinafter "Award") at 2-3.) The erection itself, and the concrete and finishing work, were to be performed by third parties. (*Id.*) Akrap made a $100,000 deposit payment upon signing the purchase agreement, but later revoked that wire transfer, and General Steel was unable to access the funds. (*Id.* at 2-3.) The Arbitrator determined that this first agreement was never consummated and was not binding. (*Id.* at 3.)

The parties continued negotiations, however: Akrap's attorney made handwritten modifications to the December 9, 2005 purchase agreement and sent the marked-up document back to General Steel on December 16, 2005. (*Id.*) General Steel returned the modified purchase agreement three days later, with two additional modifications. (*Id.*) No modifications or amendments were made to the purchase agreement after December 19, 2005, and the Arbitrator concluded that the document General Steel sent to Akrap on December 19, 2005 was a binding contract. (*Id.* at 4.) Indeed, Akrap sent General Steel an automated deposit transfer dated December 21, 2005 for the $100,000 deposit called for under the contract, and General Steel successfully deposited the funds. (*Id.*)

In the interim, Akrap had contracted with World Wide Concrete and Steel Erection, LLC ("World Wide") for the erection of the building, as well as for concrete and interior work. (*Id.* at 3.) The Arbitrator noted that Akrap paid World Wide a $33,000 deposit, and worked with World Wide on design changes submitted to General Steel in March and May of 2006. (*Id.* at 4-6.) Though Akrap contends that World Wide and its principal, Gregg Howell, were General Steel's "designated contractor," the Arbitrator concluded that Akrap was free to select any contractor to perform the construction. (*Id.* at 7-8.)

On February 7, 2006, General Steel sent Akrap documents confirming the "Order, Shipping/Delivery details, funds for payment on delivery, building plans and [verifying the]. .

.delivery details," including a projected delivery date six to ten weeks after the execution of the documents. (*Id.* at 4.) Akrap never executed or returned these documents to General Steel. (*Id.*) By the end of February, Akrap had received a complete set of plans from General Steel, but took no action to approve or disapprove of these plans, either. (*Id.* at 5, 7-8.) In early March 2006, Akrap proposed changes to the original plans, adding a mezzanine system and changing the exterior finish material for the building, ultimately bringing the total cost of the building to $475,312.27. (*Id.* at 5.) General Steel confirmed these changes in a March 8, 2006 additional component purchase order; Akrap signed it and sent General Steel an additional $25,383.68 deposit. (*Id.*) General Steel sent Akrap a second set of confirmation documents and, on March 31, 2006, two sets of revised plans, one for Akrap's approval and another for submission in an application for a City of Chicago building permit. (*Id.*) Akrap did not formally approve those documents or plans, and there is no evidence that Akrap ever submitted an application for a construction permit to the City of Chicago. (*Id.*) Akrap did request additional changes, however, and General Steel sent two change orders[1] in May of 2006. (*Id.*) As before, Akrap did not execute or return either of these documents to General Steel, nor did Akrap formally reject the orders. (*Id.* at 5-6.)

On June 2, 2006, General Steel sent Akrap a letter stating that Akrap had failed to comply with contract provisions requiring Akrap to accept delivery and satisfy the outstanding balance. (*Id.* at 6.) Akrap's attorney responded by letter stating that Akrap had not yet received plans for approval–a statement the Arbitrator found "materially at odds" with the evidence. (*Id.*) Instead, Arbitrator Kral determined that Akrap and the construction contractor, World Wide, had delayed the final revisions to the plans for mezzanine modifications by failing to provide necessary specifications to General Steel. (*Id.*)

---

[1] The award does not describe the reason for, or nature of, these changes, except to say that the first change order resulted in a reduced contract price of $448,272, and that the size of the mezzanine was reduced in the second. (*Id.* at 5-6.)

As of December 2006, Akrap had yet to accept delivery of the building components. (*Id*.) Akrap nevertheless advised General Steel on December 12 that Akrap's contractor was "pulling permits" to have the site cleaned to comply with IEPA standards.[2] (*Id*.) Almost a month later, on January 6, 2007, Akrap assured General Steel that Akrap had "every intention of accepting delivery," but had disputed issues with EPA. (*Id*.) Then on January 11, 2007, Akrap's attorney complained in a letter to General Steel that Akrap had not received plans and specifications from General Steel "and its designated Contractor Gregg Howell." The letter announced that Akrap did not approve of the preliminary plans and specifications it had received from General Steel back in February and March of 2006, and demanded return of Akrap's $100,000 deposit. (*Id*. at 7.)

The purchase agreement, signed and initialed by Akrap in December 2005, contained an arbitration clause requiring that "[a]ny controversy or claim arising out of or relating to this contract, or the breach thereof, shall be resolved by arbitration before the American Arbitration Association" and that the Federal Arbitration Act ("FAA") shall govern all interpretation, enforcement, and proceedings. (Contract, Ex. A to Amended Petition [14-1], ¶ 7.) On May 26, 2010, Akrap filed a demand for arbitration, alleging that General Steel had breached the contract and had failed to return Akrap's deposit. (*See* Demand for Arb., Ex. 1 to Pet'rs' Resp. to Mot. to Confirm Arb. Award [22].) In his ten-page written ruling, issued on November 13, 2012, the Arbitrator determined that the deposit Akrap had paid was refundable only if Akrap had a good faith basis to disapprove General Steel's building plans. (*Id*. at 3-4.) Kral recognized that in the contract negotiations, Akrap had "inserted language to make the entire project 'conditioned and contingent upon Buyer's

---

[2] The property was previously used for a vehicle repair shop with an underground oil tank. There was no indication that the oil tank was removed when the surface structures were demolished in 1977. (Award at 2.) In spring of 2006, Akrap requested and received a proposal for compliance with Illinois Environmental Protection Agency ("IEPA") Site Remediation Program to define the extent of soil and potential ground water contamination on the property. (*Id.* at 6.) Although Akrap filed a Site Remediation Application with the IEPA and received a proposal from a contractor for site remediation activities including site testing, soil removal, and clean fill, for a total cost of $200,000, IEPA records reflect that no remediation occurred at the site. (*Id.*)

approval of the Contractor and all plans and specifications . . . .'" (*Id.* at 3.) Rather than accepting this "very broad and open ended contingency without any time limit or conclusion," the Arbitrator observed, General Steel had responded with additional language limiting its responsibility to "building materials," and providing that "[i]nterior building plans [were to be] provided by the contractor.'" (*Id.* at 3-4.)

Arbitrator Kral concluded that Akrap and Akrap's erection contractor, World Wide, were responsible for the delays in the approval of the plans and acceptance of delivery. Kral noted the absence of evidence that Akrap had executed or returned any of the plans, revised plans, or change orders provided by General Steel. (*Id.* at 4-6, 8.) The Arbitrator found, further, that

> [a]fter the original and the revised plans were supplied by General Steel, Akrap continued to delay commencement of construction by changes to the scope of the project and failure to resolve the contamination problem at the site. His failure to confirm the IEPA requirements would continue to block the issuance of a permit.

(*Id.* at 7.) Because it was Akrap that had breached the contract by failing to take any action on the original or the revised plans and by failing either to approve or identify any deficiencies in those plans, Arbitrator Kral concluded, Akrap was responsible for the breach, and General Steel was entitled to retain the $125,383.68 in deposits it had received. (*Id.* at 8-9.)

On January 14, 2013, Akrap filed a petition to vacate the arbitration award in the Circuit Court of Cook County, Illinois, seeking recovery of the $125,383.68 in deposits it has paid to General Steel (Amended Petition [14] ¶¶ 5, 6, 11.) On February 26, 2013, General Steel removed the state court action to this court. (*Id.* ¶ 8.) General Steel filed a cross-petition to confirm the arbitration award [5], and has also requested attorneys' fees. (Resp't's Opp'n to Pet. to Vacate [10] at 8-9.)

**DISCUSSION**

**I.     Standard of Review**

As noted, the grounds for challenging an arbitration award are limited. "[T]he parties to an arbitration agreement choose their method of dispute resolution and are bound by it however bad their choice appears to be either ex ante or ex post." *IDS Life Ins. Co.,* 266 F.3d at 649.  Under § 10(a) of the of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 10(a), an arbitration award may be vacated only if: (1) the award "was procured by fraud, corruption or undue means," (2) there was "evident partiality or corruption" on the part of the arbitrators, (3) the arbitrators were "guilty of misconduct" in conducting the hearing; or (4) "the arbitrators exceeded their powers, or so imperfectly executed them, that a mutual, final, and definite award . . . was not made." 9 U.S.C. §§ 10(a)(1)–10(a)(4).

**II.    FAA Section 10(a)(4)**

Akrap's petition invokes § 10(a)(4)–but the suggestion that the Arbitrator exceeded or "imperfectly executed" his powers, or that he failed to make a final and definite award, is unsupported. An award is "mutual" and "final" where the arbitrator has "resolved the entire dispute (to the extent arbitrable) . . . ." *IDS Life Ins.,* 266 F.3d at 650 (citations omitted). An award is definite if it is "sufficiently clear and specific to be enforced." *Id.* (citations omitted).

In this case, Akrap's demand for arbitration alleged that General Steel breached the contract and was liable in the amount of the deposits Akrap paid pursuant to that contract. (*See* Demand for Arbitration, Exhibit 1 to Motion to Confirm [5-1].) The Arbitrator determined that it was Akrap, not General Steel, who was in breach, and that General Steel was therefore entitled to retain the deposits. (Award [14-2] at 8-9.) These determinations meet the requirements of finality and definiteness, requirements that are "more of form than of substance. They must not be confused with whether the arbitrators' award was correct or even reasonable, since neither error nor clear error nor even gross error is a ground for vacating an award." *IDS Life Ins.,* 266 F.3d at 650 (citing,

7

*inter alia, Major League Baseball Players Assoc. v. Garvey*, 532 U.S. 504, 509 (2001)). Akrap may disagree with the Arbitrator's findings, but cannot establish that the Arbitrator failed to resolve the entirety of the dispute submitted to him, or that the award is not clear and specific enough to be made judicially enforceable.

"[A] court can modify an arbitrator's decision under section 10(a)(4) only if the arbitrator exceeds the powers delegated to him by the parties." *Eljer Mfg., Inc. v. Kowin Dev. Corp.*, 14 F.3d 1250, 1255-56 (7th Cir. 1994) (citation omitted). "[M]ere error in the interpretation of the law (as opposed to failure to decide in accordance with relevant provisions of law) does not provide grounds for disturbing an arbitration award." *Id.* at 1256, citing *Health Services Mgmt. Corp. v. Hughes*, 975 F.2d 1253, 1267 (7th Cir. 1992). Only if an arbitrator issues an award "that simply reflects his own notions of economic justice rather than drawing its essence from the contract" is the court free to vacate the determination. *Oxford Health Plans*, 133 S. Ct. at 2068 (citations and internal quotations omitted).

Akrap insists that Arbitrator Kral "failed to reach a reasonably possible construction of the contract at issue" and failed to "apply the plain language of the contract to the facts of this case . . . ." (Amended Petition [14] ¶ 19.) Akrap focuses on this contract provision:

> Notwithstanding anything in this order to the contrary, this entire transaction is conditioned and contingent upon Buyer's approval of the contractor and all plans and specifications of the project. In the event Buyer does not so approve then all monies paid shall be returned to Buyer.

(Contract [14-1] at 1.) According to Akrap, this provision excuses Petitioners from any obligation until and unless they have approved of the contractor "provided to them by the Respondent" and signed off on the plans and specifications. (Amended Petition [14] ¶ 17.) As Akrap sees things, it is entitled to a refund of all monies paid to General Steel based on Akrap's own unilateral failure to "approve of both the contractor and the plans." (*Id.*)

This argument is also meritless. First, the Arbitrator reasonably concluded that the

contractor, World Wide, was selected by Akrap, not by General Steel. (Award at 7-8.) It was Akrap who paid World Wide a substantial deposit and worked with World Wide on several design changes. (*Id.* at 4-6.) Second, the Arbitrator found that the "Buyer's approval" provision had been modified such that (a) it was only applicable to "building plans provided by General Steel [and] [i]nterior building plans provided by the contractor," and (b) deposits were refundable only if Akrap had a good faith basis for rejecting General Steel's building plans. (*Id.* at 3-4.) The contract called for plans to be approved within thirty days of receipt, but Akrap never took action to approve or disapprove them–so there was no evidence that Akrap communicated its purported concerns, or had any good faith basis for disapproval. (*Id.* at 5, 8.) Akrap may disagree with the Arbitrator's interpretation of the contested provision, but an arbitral award cannot be vacated simply because there is another possible construction of the contract.

Nor is the court moved by Akrap's claim that the Arbitrator disregarded the parties' choice of law. (Pet'r's Resp. to Mot. to Confirm Arb. Award [22] ¶¶ 12, 13, 18; Pet'r's Reply in Supp. of Am. Pet. [25] ¶ 2.) The contract provides that it "shall be governed by and interpreted in accordance with the laws of the State of Illinois." (Contract [14-1] at 2.) Akrap contends that "[u]nder Illinois law, the terms of a contract must be given their ordinary and natural meaning when such terms are clear and unambiguous, and no parol or extrinsic evidence may be considered to vary the meaning of the terms." (Pet'rs' Resp. to Mot. to Confirm Arb. Award [22] ¶¶ 16-19.) Akrap reasons that by disregarding the contested provision, the Arbitrator refused to follow Illinois law. (*Id.*) It is not clear whether Akrap believes the Arbitrator ignored the provision, or interpreted it incorrectly, but in either case, the argument fails: far from disregarding the contested provision, the Arbitrator's decision addressed it directly: He determined that the provision was only applicable to building plans provided by General Steel and interior building plans provided by the contractor, and that the the deposits were refundable only if Akrap had a good faith basis to disapprove General Steel's building plans. (Award at 3-4.)

Even if Akrap were correct that the Arbitrator failed to interpret the contested provision in accordance with Illinois law, there would be no basis for vacating the award. "The fact that an arbitrator makes a mistake, by erroneously rejecting a valid, or even a dispositive legal defense, does not provide grounds for vacating an award unless the arbitrator deliberately disregarded what she knew to be the law." *Flexible Mfg. Sys. Pty. Ltd. v. Super Prods. Corp.*, 86 F.3d 96, 100 (7th Cir. 1996). The Seventh Circuit has distinguished between cases in which the arbitrator deliberately disregards the law, and those in which the arbitrator merely fails to apply it correctly. *BEM I, L.L.C. v. Anthropologie, Inc.*, 301 F.3d 548, 554 (7th Cir. 2002). Thus, arbitrators exceed their authority if "the arbitration clause directs the arbitrators to apply the law of a specified state, they decide they don't like that state's law, they like another state's law better and so they will apply that state's law." *Id.* (collecting cases). Where, however, "the arbitrators conscientiously attempt to apply Illinois law . . . but fail to apply it correctly[,] [t]he loser has no judicial remedy in that case because it is merely a case of legal error, not of *ultra vires*, and there is no judicial review of arbitration awards for legal error." *Id.* at 554-55 (collecting cases). Notably, Akrap has not suggested that Arbitrator Kral applied the law of a different state, nor has Akrap identified any basis to conclude that the Arbitrator deliberately disregarded what he knew to be the law. Akrap's argument collapses into a disagreement with the Arbitrator's interpretation of the contract–which is not a basis for vacating an arbitration award.

### III.     Request for Attorneys' Fees

General Steel also requests that the court award attorneys' fees incurred in responding to Akrap's petition. (Resp't's Opp'n to Pet. to Vacate [10] at 8-9.) Condition 7 of the contract provides that "in addition to any other liability Buyer may have to Seller, Buyer agrees to pay to Seller all legal and other expenses incurred by Seller in collecting any amounts due from Buyer or incurred on any other dispute relating to this agreement." (Contract [14-1] at 2.) The court grants General Steel's request for attorneys' fees and directs compliance with Local Rule 54.3.

**CONCLUSION**

Akrap's amended petition to vacate the arbitration award [22] is denied, General Steel's motion to confirm the award [5] is granted, and General Steel is awarded attorneys' fees incurred in responding to the petition. The court retains jurisdiction to enter such an award. Because the pendency of fee proceedings does not affect the finality of the judgment, *see Bucinich v. Becton Dickinson & Co.*, 486 U.S. 196, 100-202 (1988), this order is final and appealable.

ENTER:

Dated: November 12, 2013

REBECCA R. PALLMEYER
United States District Judge